UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PKG CONTRACTING, INC., | Case No. 20-CV-742 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON MOTIONS TO DISMISS, TRANSFER/CHANGE VENUE, AND FOR JUDGMENT ON THE PLEADINGS |
| MNX, INC. and SMITH & LOVELESS, INC., | |
| Defendants. | |

Plaintiff PKG Contracting, Inc. ("PKG"), brought this breach of contract action against MNX, Inc. ("MNX"), and Smith & Loveless, Inc. ("S&L"), stemming from a dispute over a price quotation that PKG allegedly relied upon in bidding for a wastewater treatment project. S&L moved to dismiss MNX's Third-Party Complaint against it and also to transfer venue to the United States District Court for the District of Kansas, in accordance with the forum selection clause contained in the alleged contract. MNX moved for judgment on the pleadings. For the reasons that follow, the Court grants S&L's motion to transfer and denies the remaining motions as moot.

BACKGROUND

The Court draws the following factual matter from PKG's Amended Complaint (ECF No. 37 ("Am. Compl.")), matters necessarily embraced by that document, and declarations filed as part of the record.

1

I.  **The Parties, the Project, and the Sales Agreement**

PKG is a North Dakota-based contractor that works on water and wastewater treatment projects. (Am. Compl. ¶¶ 1, 9.) S&L, a Kansas corporation headquartered in Kansas, manufactures and sells water and wastewater treatment equipment. (*Id.* ¶ 2; ECF No. 58 ("Wickham Decl. 2") ¶ 3.) MNX, a Minnesota corporation, is a sales representative for wastewater treatment equipment manufacturers, including S&L. (Am. Compl. ¶ 3; Wickham Decl. 2 ¶ 5.) In other words, MNX sells S&L's equipment to contractors like PKG. MNX's relationship with S&L is governed by a Private Development Sales Representation Agreement (the "Sales Rep Agreement"), which provides that MNX is "strictly an independent contractor and is not [S&L's] employee or agent for any purpose." (ECF No. 30-1 ("Sales Rep Agreement") ¶ 15.) The Sales Rep Agreement is to be performed in accordance with Kansas law. (*Id.* ¶ 23.)

PKG sought to bid for a contract on the Powder House Pass Waste Water Treatment Project (the "Project"). (Am. Compl. ¶ 10.) In putting together its bid, PKG needed equipment, and requested a term sheet and price quote from S&L and MNX. (*Id.*) The term sheet listed the equipment to be sold and the terms under which S&L would sell it, but it did not list the price (the "Term Sheet"). (Wickham Decl. 2, Ex. 1.) The Term Sheet contains a forum selection clause under which PKG agreed "to submit to the Jurisdiction of the State of Kansas and the venue for any disputes between the parties will be in the . . . Federal District Court of Kansas." (*Id.*, Ex. 1 at 3.) S&L and MNX sent the

price quote later and separately (the "Quote"). ECF No. 42 ("Enochs Decl.") ¶ 5; *id.*, Ex. 2.)

After PKG received the final price from MNX, it bid and won the Project. It then sent S&L a purchase order (the "Purchase Order") to confirm its order for the equipment. (Enochs Decl., Ex. 3.) It appears that neither the Term Sheet nor the Purchase Order was signed by any of the parties. (*Id.*, Exs. 1–3.) S&L and MNX then refused to honor the price. (Am. Compl. ¶ 13.) PKG was forced to seek alternative products and services to fulfill its obligations on the Project. (*Id.* ¶¶ 13–14.)

## II.     Procedural History

PKG first sued only MNX. (ECF No. 1.) MNX then impleaded S&L as a Third-Party Defendant, and S&L moved to dismiss. (ECF Nos. 20, 27–32.) PKG then filed the Amended Complaint, naming both MNX and S&L as Defendants.[1] (Am. Compl.) The Amended Complaint alleges two claims: breach of contract and promissory estoppel related to MNX and S&L's failure to honor the quoted price. (Am. Compl. ¶¶ 15–21.) S&L and MNX filed answers to the Amended Complaint; MNX also filed a Crossclaim against S&L, asserting the same claims contained in the Third-Party Complaint. (ECF Nos. 49, 61.) S&L renewed its motion to dismiss the Third-Party Complaint and also moved to

---

[1] PKG filed the Amended Complaint outside of the window for amending pleadings established by the Scheduling Order. (ECF No. 16.) Neither MNX nor S&L asks the Court to strike or disregard the Amended Complaint. Accordingly, the Court views both MNX and S&L as Defendants in this action.

3

transfer venue to the District of Kansas. (ECF Nos. 52, 54); 28 U.S.C. § 1404(a). MNX then moved for judgment on the pleadings as to PKG's claims against it. (ECF Nos. 67–71.)

## ANALYSIS

The Court has jurisdiction over the case because the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

### I. Legal Standard

The Court first addresses venue, because if the case is in the wrong forum, this Court's opinion on any substantive motion is unnecessary. The venue provision of the United States Code provides that a case may be brought in one of three places: (1) a judicial district where any defendant resides if all defendants reside in the same state; (2) a judicial district where a "substantial part" of the claim arose; or (3) if the first two options do not provide a proper venue, then the case may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

A party seeking to transfer a case must move under either 28 U.S.C. Section 1404(a) or the common law doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). When a party seeks to enforce a forum selection clause, Section 1404(a) is the appropriate vehicle to do so. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). Forum selection clauses in a valid contract are "prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons

4

such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). When parties to a contract agree to a forum selection clause, only under extraordinary circumstances will the Court deny a motion to transfer, *Atl. Marine Constr.*, 571 U.S. at 62; *In re Union Elec. Co.*, 787 F.3d 903, 909 (8th Cir. 2015), and the party opposing transfer bears "a heavy burden of proof" to avoid transfer. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972).

When considering a motion to transfer, the Court usually considers both private and public interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Ordinarily, the plaintiff's choice of forum should rarely be disturbed, but when a forum selection clause is at issue, the Court considers only the public interest factors and gives the plaintiff's forum choice no weight. *Id.*; *Atl. Marine Constr.*, 571 U.S. at 63–64. The Court considers the following public interest factors: the administrative difficulties due to court congestion; the local interest of having localized disputes resolved close to home; and the interest of having a trial in a diversity case in a forum that is familiar with the law applicable to the case. *Piper Aircraft Co.*, 454 U.S. at 241 n.6.

## II. The Forum Selection Clause

To prevail on a claim of breach of contract under Kansas law,[2] a plaintiff must show: (1) the "execution and existence of the contract alleged" in the complaint;

---

[2] The Court applies Kansas law to PKG's breach of contract claim because the Sales Agreement states that this "Agreement is governed by and subject to the laws of the State of Kansas." (ECF No. 58, Ex. 1 at 3.)

5

(2) consideration; (3) performance or willingness to perform in compliance with the contract alleged; and (4) breach. *Com. Credit Corp. v. Harris*, 510 P.2d 1322, 1325 (Kan. 1973). To form a contract, there must be: (1) a promisor and promisee with legal capacity; (2) assent by the parties to the *terms* of the contract; (3) consideration; and (4) it must not be void. *O'Neill v. Herrington*, 317 P.3d 139, 144 (Kan. Ct. App. 2014). Whether a contract exists is a question of fact. *Id.*

PKG alleges that it made its bid on the Project in reliance on a quote from S&L and MNX. (Am. Compl. ¶ 10.) The Quote alone, however, contains only the price of the goods to be sold. (*See* Enochs Decl., Ex. 2 (email from MNX giving only the price for the equipment and not details such as the equipment sought and shipping or liability provisions, among others).) For a contract to be formed, there must be terms, *O'Neill*, 317 P.3d at 144, and the only document supplying those terms is the Term Sheet. (ECF No. 58, Ex. 1, at 1–5.) For PKG to succeed on its breach of contract claim against MNX and S&L, it must prove that the Term Sheet plus the Quote constituted a contract. *See O'Neill*, 317 P.3d at 144 (stating that the parties to a contract must assent to its terms). One of the terms on the Term Sheet is the forum selection clause mandating resolution of disputes arising from the contract in a Kansas courtroom. (ECF No. 58, Ex. 1 at 3.)

PKG and MNX, arguing against the venue motion, note that the Term Sheet, Quote, and Purchase Order are all unsigned and that therefore those documents (and the forum selection clause) are unenforceable. (ECF No. 64 at 4; ECF No. 65 at 2.) PKG,

6

however, cannot deny the terms of a contract under which it seeks to recover—it is estopped from doing so. *See Steckline Commc'ns, Inc. v. Journal Broad. Grp. of Kan., Inc.*, 388 P.3d 84, 92 (Kan. 2017) ("The policy underlying equitable estoppel is that it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she . . . benefit[ed].") (quotation omitted); *see also Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("[I]n essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose."). This doctrine has a "flexible application." *Steckline Commc'ns*, 388 P.3d at 92. Although equitable estoppel ordinarily requires that one party act or do something to induce the other party to believe a certain set of facts existed (and act in reliance upon that belief), it has broad application and may even serve to establish elements of a contract. *Id.* The Kansas Supreme Court has directed that equitable doctrines like estoppel are to be applied "in order to vindicate [the] fundamental goals which are embedded in the requirements of justice and sound public policy." *Id.* In this instance, where PKG seeks to recover under a contract that contains a forum selection clause, "it would be unconscionable to allow [PKG] to maintain a position inconsistent" with the terms of the contract that it seeks to enforce. *Id.* The Court concludes that the forum selection clause is valid as to PKG.

If MNX is found liable to PKG, then MNX likewise would seek to recover from S&L under the Term Sheet, so the forum selection clause is also valid as to MNX. (*See* ECF No. 40 at 5 ("This 'contract' with PKG[—the Sales Agreement—]is the very contract that MNX is now basing its suit against Smith & Loveless on.").)

### III. The Propriety of Transfer

Having concluded that the Term Sheet contains a valid forum selection clause, the Court turns to whether that clause is enforceable. The Court concludes that PKG and MNX have not met their "heavy burden of proof" to show that transfer is inappropriate here. *M/S Bremen*, 407 U.S. at 17.

First, although a forum selection clause may be unenforceable if it is unjust or unreasonable due to fraud or overreaching, *M.B. Rests., Inc.*, 183 F.3d at 752, neither PKG nor MNX argues that either fraud or overreaching exists here. Second, the public interest factors do not weigh in favor of transfer. PKG and MNX advance no argument, and provide no evidence, that transferring the case will contribute to court congestion. Resolution of the case close to home favors Kansas, rather than Minnesota, as does the interest of having a trial in a forum familiar with the governing law, because Kansas law governs the dispute. Accordingly, PKG and MNX have not met their burden to show that transfer is inappropriate. The Court grants S&L's motion to transfer and orders the case transferred to the District of Kansas.

### IV. The Remaining Motions

Because the Court orders the case transferred, it does not reach S&L's Motion to Dismiss MNX's Third-Party Complaint or MNX's Motion for Judgment on the Pleadings. The Court denies these motions as moot.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Smith & Loveless, Inc.'s, Motion to Transfer/Change Venue (ECF No. 54) is GRANTED;

2. Smith & Loveless, Inc.'s, Amended Motion to Dismiss/General (ECF No. 52) is DENIED AS MOOT;

3. MNX, Inc.'s, Motion for Judgment on the Pleadings (ECF No. 67) is DENIED AS MOOT;

4. The Clerk of Court is directed to transfer this case to the United States District Court for the District of Kansas.

Dated: December 14, 2020                     BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge